UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARTIN L. HEIFNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:19cv21 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the Defendant, United States of America, on April 30, 2020. Plaintiff, Martin L. Heifner ("Heifner") filed his response on June 19, 2020, to which the Government replied on June 24, 2020.

Also before the court is a motion for leave to file first amended complaint, filed by Heifner on May 8, 2020. The Government responded to the motion on May 21, 2020, to which Heifner replied on June 4, 2020. The Government then filed a sur-reply on June 16, 2020.

For the following reasons, the motion for summary judgment will be granted in part and denied in part, and the motion to amend complaint will be denied.

Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R Civ. P. 56(c). The purpose for summary judgment is to determine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A court must grant a motion for summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Everett v. Cook Cnty.*, 655 F.3d 723, 726 (7th Cir. 2011)(quoting *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005)). If the moving party makes such a showing and the non-movant would bear the burden of proof on an issue which forms the basis of the motion, then the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). In determining whether there is a genuine issue of material fact, the Court must construe all facts in the light most favorable to the party opposing the motion and draw all inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995), cert. denied, 132 L.Ed. 2d 257, 115 S.Ct. 2249 (1995); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law". *Anderson*, 477 U.S. 242, 251-252 (1986). However, a "self-serving" affidavit without factual support in the record does not defeat a properly supported motion for summary judgment. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004).

## Discussion

This case, and quite a few others in this District, arise out of a review that the Veteran's Administration ("VA") Northern Indiana Health Care System ("NIHCS") initiated on December 4, 2017. This was a review of 415 podiatric surgeries performed by Dr. Bradley Hammersley ("Hammersley"), who was, at times, an employee of the VA. Heifner was one of Hammersley's

2

patients.  Prior to becoming a full-time podiatrist with the VA on September 21, 2014, Hammersley provided limited care to Veterans at VA facilities as a podiatry consultant pursuant to 38 U.S.C. § 7405(a)(2) on a fee basis. The Government concedes that Hammersley may have been considered an employee for this fee-basis work. *Quilico v. Kaplan*, 749 F2d 480 (7th Cir. 1984)(holding that a physician appointed under 38U.S.C. §1411 [§7405"s predecessor] was a Government employee).  Hammersley, through American Foot and Ankle, also provided care to covered Veterans outside the VA and outside his fee-basis appointment as a non-VA provider pursuant to the Non-VA Medical Care Program, codified at 38 U.S.C. § 1703.

NIHCS assigned Dr. Holly Becker (a VA podiatrist) to review the podiatric care Hammersley provided to Heifner. Dr. Becker's review was conducted on January 18, 2018. Dr. Becker issued a written report confirming Hammersley failed to meet the standard of care regarding multiple aspects of Heifner's preoperative and operative care between January of 2014 and late 2015.

On February 22, 2018, VA administrators and risk management personnel met with Heifner to discuss the podiatry care he received from Hammersley. At that meeting, Heifner learned he had received substandard care from Hammersley beginning in January of 2014 and continuing all the way up through the follow-up appointments Heifner had with Hammersley after his second surgery in September of 2015. On March 5, 2018, the VA provided Heifner with an Institutional Disclosure of Events ("Disclosure") containing a detailed analysis of Hammersley's various acts of malpractice. The substance of the March 5, 2018 Disclosure was based on Dr. Becker's review and analysis of Heifner's VA podiatry records. Heifner filed a Standard Form 95 FTCA notice of claim in March of 2018. After his tort claim was denied, Heifner retained counsel

3

and sued the United States. Heifner's initial complaint was filed in January of 2019.

In the section of his complaint titled "Statement of Claim", Heifner alleges:

21. Heifner presented to Dr. Hammersley on January 22, 2014 for severe pain in his left leg.

22. According to the Institutional Disclosure of Adverse Event ("Disclosure") from the VA dated March 5, 2018, attached hereto as Exhibit 1, an MRI showed a lesion and bruise of the soleus medial head of the gastrocnemius.

23. Dr. Hammersley diagnosed Heifner with ruptured muscle with neoplasm of uncertain behavior at medial head of gastric, which according to the Disclosure, the MRI did not support this diagnosis.

24. On June 17, 2014, Dr. Hammersley performed surgery on Heifner's left leg, focusing on the medial gastrocnemius muscle instead of the lateral soleus where the mass was located. Additionally, Dr. Hammersley used Fiber wire in the muscle, which, according to the Disclosure, is not the correct suture to be used. Further, the surgery report does not show that Heifner's Achilles tendon was repaired. Despite the surgery performed by Dr. Hammersley, Heifner continued to have pain.

25. According to the Disclosure, Dr. Hammersley failed to properly diagnose and treat the injury to Heifner's left leg.

26. Dr. Hammersley committed malpractice by failing to properly diagnose and treat the pain in Heifner's left leg.

27. On February 22, 2018, Plaintiff was notified by VA administrators that Plaintiff was the victim of malpractice at the hands of Dr. Hammersley and that Plaintiff had the right to file a claim against the VA.

28. In the March 5, 2018 Disclosure, the VA admitted that Dr. Hammersley committed malpractice in connection with his care and treatment of Plaintiff.

29. As a direct and proximate result of the Defendant's negligence, Heifner has left leg and foot numbness and pain.

30. As a direct and proximate result of the Defendant's negligence, Heifner has experienced a loss in quality and enjoyment of life.

31. Plaintiff is seeking the applicable elements/categories of damages as set forth in

4

Indiana Model Civil Jury Instructions ("IMCJI") 703.

In support of summary judgment, the Government argues that at the times relevant to Heifner's complaint, Hammersley was not an employee of the VA.

The United States, as a sovereign, is immune from suit for money damages absent consent. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Heifner points to the Federal Torts Claims Act as the authority providing waiver of this immunity for his claim. However, the FTCA does not provide a waiver for Heifner's claims. The FTCA waives sovereign immunity and authorizes suits against the United States for monetary damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This waiver explicitly excludes "any contractor with the United States" from its definition of "[e]mployee of the government." 28 U.S.C. § 2671.

As a waiver of sovereign immunity, the FTCA must be strictly interpreted and applied when granting relief. *Sherwood*, 312 U.S. at 590, 61 S.Ct. at 771. Here, Heifner's allegation fails to satisfy pertinent aspects of the identified provision of the FTCA's waiver of sovereign immunity. Fatally, Hammersley was not an employee of the VA when he performed Heifner's 2014 surgery pursuant to the Non-VA Care Program.

The record is undisputed that Heifner's 2014 surgery was "Non-VA" care performed pursuant to the Non-VA Care Program. It is documented as such repeatedly throughout Heifner's medical records. As noted in the Non-VA Consult Request, the VA was simply unable to provide

5

the care Heifner needed. (Defendant Ex. 3, p. 6 ("VA does not provide the required service")).

In response, Heifner has admitted that summary judgment should be granted in favor of the Government on his claims arising out of his June 17, 2014 surgery. The Government, in turn, admits that this Court should grant only a partial motion for summary judgment because a material issue of disputed fact remains as to whether Hammersley made a misdiagnosis prior to the June 2014 surgery, when he may have been a §7405(a)(2) Government employee.

This brings us to Heifner's motion to amend complaint. Realizing that he basically pled himself out of court in his original complaint, Heifner now seeks to broadly expand his "Statement of Claim" as follows:

18. Heifner presented to the VA Medical Center and saw Dr. Hammersley on December 20, 2013 for severe pain in his left leg.

19. With respect to the December 20, 2013 encounter at the VA Medical Center, Dr. Hammersley documented in the VA record, "ruptured muscle with neoplasm of uncertain behavior at medial head of gastroc."

20. According to the Institutional Disclosure of Adverse Event ("Disclosure") from the VA dated March 5, 2018, attached hereto as Exhibit 1, the MRI showed a lesion and bruise of the soleus medial head of the gastrocnemius.

21. According to the Disclosure, the MRI did not support Dr. Hammersley's diagnosis of "ruptured muscle with neoplasm of uncertain behavior at medial head of gastroc."

22. Dr. Hammersley breached the standard of care by making an incorrect diagnosis on December 20, 2013.

23. When performing his duties on December 20, 2013 at the VA Medical Center, Dr. Hammersley was an employee of the Veteran's Administration of the United States Government.

24. Heifner returned to see Dr. Hammersley at the VA Medical Center on January 22, 2014, February 21, 2014, April 23, 2014, and June 6, 2014.

6

25. For each of the visits on January 22, 2014, February 21, 2014, April 23, 2014, and June 6, 2014, Dr. Hammersley documented "ruptured muscle with neoplasm of uncertain behavior at medial head of gastroc."

26. Dr. Hammersley breached the standard of care by making an incorrect diagnosis on January 22, 2014, February 21, 2014, April 23, 2014, and June 6, 2014.

27. When performing his duties on January 22, 2014, February 21, 2014, April 23, 2014, and June 6, 2014 at the VA Medical Center, Dr. Hammersley was an employee of the Veteran's Administration of the United States Government.

28. In the April 23, 2014 podiatry note in the VA records, Dr. Hammersley documented that Heifner "needs fee basis referral."

29. On May 1, 2014, Dr. Wing Sue Shiu submitted a consult request for podiatric surgery to be provided by Dr. Hammersley.

30. Dr. Wing Sue Shiu was an employee or agent of the Veteran's Administration of the United States Government when she submitted the consult request on May 1, 2014.

31. In the May 1, 2014 consult request, Dr. Wing Sue Shiu documented that Heifner's had a ruptured muscle with neoplasm of uncertain behavior.

32. Dr. Wing Sue Shiu breached the standard of care by negligently referring Heifner for a surgery that he did not require.

33. An employee of the United States Government (unknown to Plaintiff and his counsel at this time) authorized the surgery requested by Dr. Hammersley and Dr. Shiu.

34. The above-referenced employees, agents and/or representative of the United States Government breached the standard of care by negligently authorizing a surgery Heifner did not require.

35. On June 17, 2014, Dr. Hammersley performed surgery on Heifner's left leg, focusing on the medial gastrocnemius muscle instead of the lateral soleus where the mass was located. Additionally, Dr. Hammersley used Fiber wire in the muscle, which, according to the Disclosure, is not the correct suture to be used. Further, the surgery report does not show that Heifner's Achilles tendon was repaired. Despite the surgery performed by Dr. Hammersley, Heifner continued to have pain.

36. Heifner returned to see Dr. Hammersley at the VA Medical Center on June 25,

7

      2014, July 9, 2014, and August 15, 2014.

37. Dr. Hammersley breached the standard of care during the June 25, 2014, July 9, 2014, and August 15, 2014 visits by negligently failing to mitigate or take appropriate measures to treat the damages/harm he created by doing an unnecessary and negligent surgery on June 17, 2014.

38. On November 5, 2014, Heifner returned to see Dr. Hammersley at the VA Medical Center for ongoing pain associated with the June 17, 2014 surgery.

39. Dr. Hammersley documented that Heifner had "history of new injury to lateral left posterior leg." To the contrary, Heifner did not have any "new" injury. Plaintiff was experiencing ongoing complications from the June 17, 2014 surgery.

40. According to the Disclosure, Plaintiff underwent an ultrasound on November 5, 2014, which showed a partial tear of the superficial fascia of the left lateral gastrocnemius muscle."

41. On December 9, 2014, Heifner returned to see Dr. Hammersley at the VA Medical Center. Dr. Hammersley documented, "[W]ill schedule pt for surgery asap."

42. Dr. Hammersley performed surgery at the VA Medical Center on September 25, 2015.

43. According to the Disclosure, an acute tear of the superficial fascia of the gastrocnemius needs to be fixed within 21 days after the injury.

44. Dr. Hammersley breached the standard of care by performing a fascia repair approximately 11 months after the injury.

45. According to the Disclosure, Dr. Hammersley breached the standard of care by failing to properly perform the September 24, 2015 surgery at the VA Medical Center.

46. According to the Disclosure, Dr. Hammersley breached the standard of care by failing to properly diagnose and treat the injury to Heifner's left leg.

47. Dr. Hammersley breached the standard of care by failing to properly diagnose and treat the pain in Heifner's left leg, by performing surgery 11 months after the injury, and by failing to properly perform the surgery on September 24, 2015.

48. On February 22, 2018, Plaintiff was notified by VA administrators that Plaintiff was the victim of malpractice at the hands of Dr. Hammersley and that Plaintiff had

8

      the right to file a claim against the VA.

49. In the March 5, 2018 Disclosure, the VA admitted that Dr. Hammersley committed malpractice in connection with his care and treatment of Plaintiff.

50. As a direct and proximate result of the Defendant's negligence, Heifner has left leg and foot numbness and pain.

51. As a direct and proximate result of the Defendant's negligence, Heifner has experienced a loss in quality and enjoyment of life.

52. Plaintiff is seeking the applicable elements/categories of damages as set forth in Indiana Model Civil Jury Instructions ("IMCJI") 703.

Not surprisingly, the Government has objected to the motion to amend, arguing that the new allegations concerning the 2015 surgery are futile and subject to a motion to dismiss, and that adding claims related to Dr. Shui's non-VA care referral would also be futile and subject to dismissal.

Federal Rule of Civil Procedure 15(a)(2) states that leave to amend should be freely given when justice so requires. Courts will deny leave to amend when the amendment is brought with "undue delay, bad faith, or dilatory motive on the part of the movant" and when there is undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962) (explaining that leave should not be granted where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."). Leave to amend filed in response to a motion for summary judgment is often denied on this basis. *JP Morgan Chase Bank NA v. Drywall Service and Supply Co., Inc*,, 265 F.R.D. 341 (N.D. Ind. 2010) ("[T]he Seventh Circuit has approved denials of leave to amend because the moving party appeared to be trying to avoid the consequences of a summary

9

judgment decision."). The Court will also deny leave to amend where the proposed amendment is futile. *Foman*, 371 U.S. at 182. A proposed amendment is futile where it would not survive a motion to dismiss. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993). A case will not survive a motion to dismiss where it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2008). The decision of the court to deny leave to amend a complaint is an abuse of discretion "only if 'no reasonable person could agree with the decision.'" *Winters v. Fru–Con, Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (quoting *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004)).

As the United States is the defendant in this case, the Federal Tort Claim Act's statute of limitations comes into play. The United States, as sovereign, is immune from suit without its consent. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell,* 463 U.S. 206, 212 (1983); *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972). Congress has waived sovereign immunity for tort claims against the United States for torts committed by individuals covered under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b) & 2679. When Congress attaches conditions to legislation waiving the sovereign immunity of the United States, "those conditions must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (internal quotations and citations omitted); *Block v. North Dakota*, 461 U.S. 273, 287 (1983).

In order to bring a claim under the FTCA, a plaintiff must comply with the strict prerequisites to suit. *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999). Among the prerequisites is the limitations provision of 28 U.S.C. § 2401(b), which states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
> 28 U.S.C. § 2401(b).

Thus, under the FTCA, unless an action is presented to the Federal agency within two years after accrual and commenced in District Court against the United States within six months after receipt of the "final denial" of the administrative claim, it is forever barred. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352 (1979) (citing 28 U.S.C. § 2401); *Rush v. Lock*, No. 01-1181, 2001 WL 1108824 *2 (7th Cir. Sept. 18, 2001) (claim barred where it was not raised within six months of denial of administrative claim).

Thus, the Government argues that it would be futile to grant Heifner leave to amend to add allegations related to his September 25, 2015, surgery and Dr. Shiu's non-VA care referral because (1) he failed to exhaust his administrative remedies with Dr. Shiu, (2) both these claims are untimely, and (3) the claims would not survive a motion to dismiss.

Heifner presented his administrative claim to the appropriate agency, the VA, on March 14, 2018. (Dkt. No. 1-1). In box 6 of the SF95, Heifner identified both surgeries, recording 2014 and 2015 as the date of occurrence. (*Id*.) Heifner did not make any allegations about Dr. Shiu or the Non-VA Care referral generally. (*Id*.). The VA formally denied Heifner's claims by letter on July 30, 2018. The letter informed Heifner that he had six months from the mailing of the "final denial" to file suit in Federal district court naming the United States. Heifner had, therefore, until January 30, 2019, six months from the "date of mailing" to raise his claims against the United States in Federal district court, or the claim would be "forever barred." 28 U.S.C.§2401(b); *Augutis v.*

11

*United States*, 732 F.3d 749, 752 (7th Cir. 2013).

Heifner filed his Complaint on January 22, 2019, alleging negligence only as it relates to his 2014 surgery and only as to Hammersley. Now more than 21 months after receiving his denial letter, Heifner seeks leave to add claims related to his September 25, 2015 surgery and Dr. Shiu. The Government contends that because Heifner failed to comply with the FTCA's exhaustion and statute of limitations provisions, this Court should deny Heifner's motion for leave to amend to add these claims. *Hoosier Bancorp of Indiana, Inc. v. Rasmussen*, 90 F3d 180, 183 (7th Cir. 1996).

Heifner, however, contends that Paragraph 26 of his original complaint which states "Dr. Hammersley committed malpractice by failing to properly diagnose and treat the pain in Heifner's left leg" is broad enough to apply to both the June 2014 surgery and the September 2105 surgery, because both surgeries were performed to treat pain on Heifner's left leg.

Heifner also notes that when he filed his original complaint, he attached as an exhibit a copy of the Disclosure which spelled out the details of Hammersley's negligence in connection with both surgeries.

With respect to Dr. Shiu, Heifner's counsel states that he only recently learned that Heifner's June 17, 2014 surgery was approved by the VA's Community Care Department, and thus Heifner agrees that this Court should deny Heifner's request to add any claims of negligence on the part of Dr. Shiu. (Paragraphs 29-32 of the Proposed Amended Complaint).

The Government takes issue with Heifner's attempt to use the Disclosure to magically graft the 2015 surgery onto the original complaint (which totally neglects to mention the 2015 surgery). According to the Government, the Disclosure was not a proper attachment to the original

12

complaint.

Fed. R. Civ. P. 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." "A 'written instrument' within the meaning of Rule 10(c) "is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *DeMarco v. DepoTech Corp.*, 149 F.Supp.2d 1212, 1220 (S.D. Cal. 2001) (citing *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F.Supp. 1108, 1115 (W.D.N.Y.1996) (citing Black's Law Dictionary 801, 1612 (6th ed.1990)).

The Government argues that the Disclosure is not a written instrument with independent legal significance, and thus was not a proper attachment under Rule 10(c), and thus it could not be incorporated by reference into Heifner's Complaint. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998) (holding that the plaintiff did not adopt every word within letters written by the opposition by attaching the letters to his complaint); *Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016) (holding that an incident report is not integral to the complaint and could not be considered on a motion to dismiss); *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015) (holding that document with "no independent legal significance to [plaintiff's] claim" was not integral to complaint); *Scanlan v. Sisto*, 2012 WL 1130668, *2 (E.D. Cal. March 28, 2012) (holding that a prison incident report is not the type of "written instrument" that is properly attached to a complaint because the incident reports do not form the basis of the civil rights complaint; the basis is the defendant's alleged action or inaction); *DeMarco*, 149 F.Supp. 2d at 1222 (finding that expert affidavit did not qualify as a written instrument and was

13

not incorporated into complaint pursuant to Rule 10(c)).

Furthermore, it is well-settled that "[w]hen the exhibit, however, is not the subject of the claim, Rule 10(c) does not require a plaintiff to adopt every word within the exhibit as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998). Clearly, Heifner was not required to adopt or pursue all of the conduct in the Disclosure, and specifically did not adopt the portion of the Disclosure related to his 2015 surgery into his Complaint. Thus, Heifner failed to satisfy the pleading requirements under Fed. R. Civ. P. 8(a), and did not properly assert a claim related to his 2015 surgery in his original complaint. Fed. R. Civ. P. 8(a)(explaining that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). Further, his attempt to do so in his amended complaint remains untimely, as he needed to file his claim on or before January 30, 2019, and his proposed amended complaint was not filed until May 8, 2020.[1]

With respect to Heifner's argument that Paragraph 26 of the original complaint encompasses the 2015 surgery, the Government contends that this broad statement cannot provide a basis for Heifner to bring in any and all care he received on his left leg from Hammersley. *See generally Thornton v. CMB Entertainment*, 309 F.R.D. 465, 471 (S.D. Ind. 2015) (finding that general allegations of harassment and disparaging comments provided no specific facts and did not

---

[1] The proposed amended complaint does not relate back to the original complaint because an allegation relates back only when the amended complaint arises out of the "same occurrence" set forth in the original complaint. Fed. R.Civ.P. 15(c).  It is clear from the medical records that Heifner's 2015 surgery was the result of a new injury that occurred in mid-October 2014, after months of being pain-free after his 2014 surgery. (Def. Ex. 2, pp. 5, 7-10, 13-16).  Moreover, the new injury was to a different part of Heifner's leg (Def. Ex. 1, pp. 2-3, 7-12, 17-18).

14

establish claim). This is especially true because this statement references only one injury, without identifying which injury, when Heifner's 2014 and 2015 surgeries arose from two separate injuries. It is undisputed that Heifner's 2015 surgery involved a new injury to Heifner's leg, which did not occur until several months after his 2014 surgery, and was unrelated to his 2014 surgery. Clearly, such broad allegations do not contain sufficient factual matter that could state a claim for relief that is plausible on its facts as it relates to Heifner's 2015 surgery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2008) (explaining that a case will not survive a motion to dismiss where it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Otherwise, Heifner's claim could continually morph and leave the United States without knowledge of what specific care is the subject of Heifner's complaint. This would defeat the intent of Fed. R. Civ. P. 8(a).

Heifner has not provided the Court with any authority supporting his position that the Disclosure is a document of legal significance, such that it was properly attached to his original complaint. In fact, the Disclosure itself indicates that it is a "Work Copy - Not For Medical Record" and "Unofficial - Not for Medical Record". The Disclosure also states "Do Not File". All of these notations signify that the Disclosure is not a document of legal significance. Thus its attachment to the original complaint does not automatically insert claims related to the 2015 surgery into the original complaint.

The Government maintains that even if the Disclosure could be considered in conjunction with Heifner's general and broad allegations of negligent care and treatment, Heifner did not adopt the portions of the Disclosure related to his 2015 surgery. Heifner expressly adopted the portions of the Disclosure related to the 2014 surgery. Thus the Government concludes that if Heifner had

15

intended to pursue issues related to the 2015 surgery, he would have specifically adopted those portions also. Clearly, Heifner failed to assert any claim related to the 2015 surgery and the United States was without knowledge of the same.

Heifner also argues that his claims related to his 2015 surgery arise out of the same occurrence because his pain in his left leg began in November of 2014 all the way through the time he underwent the 2015 surgery. Not only is this inconsistent with the medical records, which show that the 2015 surgery was due to a new injury, Heifner has also failed to show that any of the facts required to establish negligence in the 2015 surgery would be the same as the 2014 surgery that he did allege. Indeed, the 2015 surgery would require Heifner to prove an entirely separate set of facts related to a different surgery, that was conducted by the VA instead of American Foot and Ankle, occurred on a different date, at a different facility, involved a different diagnosis, different imaging, different alleged acts of negligence during the surgery, different incision points, and different anatomical areas of Heifner's leg. In light of these differences, Heifner's 2015 surgery does not arise out of the same occurrence as his 2014 surgery, and his proposed amended complaint does not relate back to his original complaint. The claims in the proposed amended complaint are untimely and would not survive a motion to dismiss.

Accordingly, for the foregoing reasons, Heifner's motion to amend his complaint will be denied.

## Conclusion

On the basis of the foregoing, the Government's motion for summary judgment [DE 20] is hereby GRANTED IN PART AND DENIED IN PART. Specifically, summary judgment is GRANTED with respect to Heifner's claims arising out of his 2014 surgery, and summary

judgment is DENIED with respect to claims arising from the issue of whether Hammersley made a misdiagnosis prior to Heifner's 2014 surgery.

Further, Heifner's motion for leave to file first amended complaint [DE 22] is hereby DENIED.

Entered: July 20, 2020.

s/ William C. Lee
William C. Lee, Judge
United States District Court
